You may be seated. Our next case of the afternoon is Burns v. Piatt County for the appellate, Mr. Haynes. For the appellee, Mr. Wilson, you may proceed. Thank you, Don. Good afternoon. This is a case of first impression. This statute that we're considering has not been interpreted today. Keep your voice up, please. Excuse me? Keep your voice up. Keep your voice up. I'm sorry. I'm hard of hearing, too. Well, I'm having problems with this and your PA system. They seem to conflict. Yeah, and our PA system really just records. It doesn't amplify. In any event, I've gotten rid of it. Now perhaps I can hear. This is a case of first impression, so far as I'm able to determine. There have been no Illinois cases interpreting the particular statute we're concerned with. There is an Illinois case which mentions it, and that is the Phelan case, which in passing mentions the statute because one of the parties cited it in the brief, although it was inapposite to anything that was before the court. There is a Seventh Circuit case in which the Seventh Circuit determined that in Winnebago County when they erected a two-tier system of health benefits for active deputies and a higher premium for retired deputies, with their group insurance policy, that that was a violation of law. The Seventh Circuit went on to decide that it could not entertain the case because it did not raise a question under Section 1983. But it did say firmly that that was a violation of Illinois law, and the parties were left to the Illinois courts for their remedy. This case is a situation in which Hyatt County does not provide health benefits to its either its active or retired deputies through a group insurance policy. It does provide for membership in the HMOs at Health Alliance and, for the life of me, the other name of the other HMOs, Personal Care. Those are contracts separate and apart from any group insurance policy. They are not insurance policies. And as we understand the word premium, no premium is charged, but a membership fee is charged. With respect to active deputies, the county contributes all or substantially all of the cost of membership for active deputies. And in varying amounts from the time my clients were first involved through the present day, as every collective bargaining agreement comes up, that amount changes. So I can't tell you today that it's been a level contribution, but the active deputy gets coverage at virtually no cost to himself except for dependent coverage, which is not involved in this case. Now, the statute involved here makes a distinction between counties or municipalities, as they use the word in the statute, who provide health insurance benefits through a group insurance policy, and counties or municipalities in which they provide health benefits through other than a group insurance policy. In this case, Piatt County has chosen the other route to go with the managed care system, the HMO. The statute specifically defines the required premium in the case of continued coverage, because as we use the language, a premium doesn't apply. These are not premiums. But they redefine required premium to be that portion of the cost of the HMO coverage not provided by the county, and I'm paraphrasing, either voluntarily or through a collective bargaining agreement. Now, Piatt County has a collective bargaining agreement with its deputy sheriffs through the paternal order of police lodge. I will agree with Mr. Wilson that there is nothing in the collective bargaining agreements, either going back to when Deputy Burns retired or the present day, which even mentions retired deputies. The collective bargaining agreement is between the active deputies and the county. Is that important? Is that important? I don't believe that it is. Mr. Wilson urges that it is important, that we aren't covered in that collective bargaining agreement. We wouldn't expect to be covered in the collective bargaining agreement. The county has bargained with its active deputies to pay so much. The statute, it is not the collective bargaining agreement that defines the county's liability. It is the statute, and the statute provides that the insurance company may not discriminate in the amount of the premium or any other benefit under a group insurance policy. Now, that's the definition. Unfortunately, and frankly, if the legislature had achieved that measure of precision in its language that both Mr. Wilson and I strive to achieve in our writing, we wouldn't be here. But what they attempted to do in the second portion of the statute was to harmonize those counties or municipalities which did not use group insurance with the first portion, and they may have done an imperfect job. If you were to adopt the interpretation Mr. Wilson urges, that the county is not bound by the same rules as the group insurance company, you are saying to us, the county may discriminate unless in its collective bargaining agreement with the active deputies it agrees not to. Now, that's plainly not what the legislature wrote. It's unfortunate that the legislature chose to try to combine these two things into one statute. It is, I suggest, the equivalent of hitching a two-horse tame to a plow on the one side and a harrow on the other and then driving the two horses in different directions. It would have been better had they chosen to set these things up separately, but they did not. They tried to use one vehicle to accomplish two purposes. I believe that the only proper reading of this statute sustains our position that any other reading permits the county to avoid the non-discriminatory procedure. I think that Judge Schoffweiler should be reversed and the matter remanded to him for further proceedings. Thank you, counsel. Mr. Wilson? Gentlemen of the court, good afternoon. I think Mr. Hayes and I are reading different statutes. The statute before you today, 367H, is one of a series of statutes adopted by the Illinois legislature in 1983 and 1985 when something else was happening in our country, the adoption of COBRA. COBRA was adopted in 1985. Legislatures and Congress were concerned about individuals losing their health insurance coverage for a variety of reasons. And therefore, around the state, including, excuse me, around the nation and including in Illinois, the legislature and Congress passed laws allowing employees, if they lost coverage for a variety of reasons, to continue insurance coverage at their own expense. The statute in question here is one of a series of statutes adopted by the Illinois legislature in 1983 and 1985. The first statute, which I mentioned in my brief, is 367F of the insurance code. All of these statutes are verbatim identical except for the name of the employee. 367F was a downstate fireman's statute and did provide it, as does the one before the court today, that when employees retire, they may continue their health insurance plan coverage at their own expense. And, as Mr. Hayes pointed out, it didn't make any difference if that was via a traditional indemnity health insurance carrier or if that was by providers of health care such as HMO, PPO, and the like, self-insurance. The statute makes very clear, both positively and negatively, that when continuation coverage applies for the variety of employees that the legislature has now made it applicable to, 367F, firemen, 367G, policemen, 367H, deputies, 367J, every other IMRF employee in the state of Illinois, two things apply. The statutes, all these statutes which follow one behind the other, say the following. No municipality shall be required by any provision of this section to pay any group insurance premium other than one negotiated in a collective bargaining agreement. And if that weren't enough, the statute goes on to say, if a deputy elects to, I'm now referring to the statute that's before you, the deputy statute, if a deputy elects to continue coverage, it shall be the obligation of the deputy to pay the monthly premium directly to the municipality, which shall then forward it to the insurance company. Finally, in the last section, which Mr. Hayes referred to and says creates this distinction, the legislature goes on to say, if there happens to be instead of indemnity insurance, an HMO or PPO, and remember back in those days those were still fairly new ideas, the legislature said, and references to the required premium that the deputy is to pay and the employer is not obligated to pay, shall refer to that portion of the cost of such benefits which are not borne by the municipality. Either voluntarily or pursuant to the provisions of a collective bargaining agreement. My friend, Mr. Hayes, argues this. Because Piatt County has a collective bargaining agreement, which requires the employer to pay premiums toward health insurance costs for active employees under its HMO or PPO, therefore, Piatt County and every other local governmental entity in the state of Illinois, by these other statutes, are required to pay the premiums for the deputy. And for their spouses, as long as the spouses live, and for their dependent children. The statute says nothing of the kind. The statute says precisely the opposite twice. There is nothing in the history of the statute, and I provided in my brief some legislative history for the court to consider, nothing in that history suggests that there would be any possible imposition upon counties, every other type of state and local government, of the massive costs that this would obtain. In the record, you will see that at the time, Piatt County, when this lawsuit was filed, was contributing $500 per month per deputy. Just assume that that's the case, roughly $6,000 per year per employee for the rest of their lives when they retire. When you read, or if you have already read, the legislative history, you will see reference again and again to the legislature saying, this bill has no cost. This bill has very little cost. The deputies will have to pay, or actually the firemen, that was the first bill that was passed in the 83rd General Assembly, this in the 85th. It's the employees who will have to pay these costs. They'll have to pay their share. The distinction which Mr. Hayes attempts to draw is that the statute allows, under the Illinois State Labor Act, it is permissible for an employer to agree to pay the health insurance premiums of retirees. It's not mandatory. The legislature in 1983 and 1985 recognized that that was a possible thing for a collective bargaining agreement to include, but it hardly mandates that they include it. In fact, the legislature makes clear in the language of the statute, the only obligation that a county or municipality has is to provide the premiums which it negotiates in a collective bargaining agreement. That verb appears twice. If Mr. Hayes' argument is correct, there's no negotiating because, according to Mr. Hayes, the payment by the employer of the employee's premiums after retirement for the rest of his or her life is mandatory. That would render the word negotiation meaningless. But there's another bizarre consequence to the argument that demonstrates that the legislature could not have intended it. According to Mr. Hayes' argument, it's the existence of the collective bargaining agreement and the provision in the collective bargaining agreement for active employees, which triggers an obligation to pay continuation premiums for retired employees. But what result would obtain in the many, many units of local government that don't have collective bargaining agreements? Since the only trigger, according to my friend Mr. Hayes, is the existence of the collective bargaining agreement, then any entity, any governmental entity, that didn't have a collective bargaining agreement would have no obligation to pay continuation premiums for its employees. I submit that that is not merely a bizarre consequence. It would be unconstitutional. It would be punishing employees for their associational rights. It would violate the First Amendment, would it not? You employee worked 35 years. You were hired on the same day as this other employee. You happen to have elected traditional insurance. Therefore, and there's a collective bargaining agreement that applied to you while you were working, the employer is obligated to pay for you your premiums for the rest of your life. But you employee hired the same day, worked the same amount of time, did exactly the same work. You have no collective bargaining agreement. You didn't want to have a collective bargaining agreement. Of course, collective bargaining agreements are the choice of the employee. It's up to the employee to decide whether or not they wish to be represented by a union under the Illinois State Labor Relations Act. You have no premiums paid by the employer. Therefore, anyone who didn't belong to a union loses $6,000 a year, tens of thousands of dollars over the course of his or her remaining life. There's nothing in the legislative history which would suggest that the legislature had anything like that in mind. And instead, the legislative history makes it quite clear that this was simply continuation coverage, just like COBRA. The problem at the time, continues to be a problem, how do you get health insurance when you're not employed anymore? Individual policies were then becoming very expensive.  The answer was, the employee who's retired, you may, if you elect to do so, continue under your employer's insurance policy at your own expense, just as 367A says. My friend, Mr. Hayes, makes much of the non-discrimination language in the statute. In fact, the statute does not say that discrimination is prohibited. It says that there cannot be more than one premium structure. The record before you will show that there's an HMO and a PPO payment, or excuse me, HMO and PPO provider. Each one has a separate premium. But everyone who selects, as Mr. Hayes pointed out, Health Alliance, has won the premium to pay. And everyone who selects the other HMO, personal care, has won the premium to pay. So there's no discrimination. The premium structure is the same exactly for both the retirees and the current workers. The question is, who pays for it? And nothing in 367H says the employer pays for it, and 367 makes very clear that the deputy pays. Nothing in the statute also, in fact, makes the distinction which Mr. Hayes argues to you. Mr. Hayes is correct. The legislature, 367H, of course, is part of the insurance code. It's part of the great regulatory scheme of the insurance code, and therefore the legislature was regulating insurance companies. At the very end of the statute, it becomes clear from reading it, the legislature had an aha moment. It said, aha, HMOs and PPOs are not regulated under the insurance code. Therefore, we have to make a different provision. But that provision merely says, the one which Mr. Hayes cited to you, merely says that in respect to a premium, that means the amount of money that's due to an HMO or PPO or health insurance plan. And the notice which is due, instead of being sent by the insurance company, there is no insurance company, is sent to the employee by the employer instead. But it doesn't alter at all the statute's language that says, nothing in this statute obligates the municipality to pay anything for the cost of health insurance. Because of that, Judge Schunkweiler's order was correct, and I believe it should be approved. Thank you very much. Thank you, Counselor. Mr. Hayes, rebuttal? Very briefly. Mr. Hayes, could I, can you hear me? I can. All right, I wanted to ask you, does 367A provide in essence that no municipality shall be required to pay any group insurance premium other than one that may be negotiated in a collective bargaining agreement? Yes, it does. It does precisely that. How does that help you? In the collective bargaining agreement with the deputy sheriffs, they provided that coverage. The statute also says as follows, no distinction or discrimination in the amount or rate, this is referring to group insurance policy, in the amount or rate of premiums or in any waiver of premium or other benefit provision shall be made between continued group insurance coverage elected pursuant to this section and equivalent coverage provided to deputies under the group policy other than pursuant to the provisions of this section. And it goes on with the proviso you just cited. But does the amount that a retired deputy pays, is that different than what the full-time deputy pays? In Piatt County, the full-time deputy pays the premium, or excuse me, the cost in our case, of health care benefits not contributed by the county. In the first instance, it's applied to the deputy's individual coverage until the amount of the defined contribution by the county is used up, then it applies to his spouse's coverage or his dependent's coverage. In neither Mr. Carr's case nor in Mr. Byrne's case are we dealing with dependent coverage or with spousal coverage. The statute then goes on to define required premium. And the reason that that's important is that required premium, as opposed to the premium for the group policy, is that which the deputy is required to pay in the group policy situation. That's redefined by the legislature as that portion, let's see if I can find it, shall refer to that portion of the cost of such benefits, which is not borne by the municipality, either voluntarily or pursuant to the provisions of a collecting bargaining agreement. Now Mr. Wilson says that unless you have a collecting bargaining agreement with the retired deputies as a separate bargaining unit, you can discriminate. But that's what that means. I think that's a strange and confused idea. Well your opponent argues that in the legislative history it shows that the legislators didn't want to have to be burdening the county with those premium payments. I don't think that's what the legislative history says. If you read Mr. Pinka's comments, it certainly sustains our position. The fact is they were talking in brief, very quickly, on a non-controversial bill. And they were saying that the only cost that's imposed upon the municipality, whether it be a county or a city or a township, is that which they bargained for. That's what each one of those comments says. And that's what we say. They bargained for it. They are obligated to do it. But it is not the collecting bargaining agreement that my friend Mr. Wilson urges, which defines the nature of the liability. It is the statute itself. The collecting bargaining agreement is simply the indices by which we determine what that obligation is.